

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Virginia**

DEBORAH KOGER,

     Plaintiff,

v.                           Civil Action No. 3:09cv90

C.T. WOODY, in his official Capacity
as Sheriff, City of Richmond, Virginia

     Defendant.

### MEMORANDUM OPINION

This matter is before the Court on the Defendant's Motion to Dismiss (Docket No. 3).  For the reasons set forth below, the Motion to Dismiss will be granted in part and denied in part.

### BACKGROUND

On February 17, 2009, Deborah Koger filed a Complaint against "C.T. Woody, in his official capacity as Sheriff, City of Richmond, Virginia."  The Complaint seeks compensatory damages based on Koger's contention that, on a number of occasions, she was retaliated against while she was employed by the Sheriff's Office.  The Complaint sets forth the following factual exposition.

1

On May 4, 2007, Robert Garrett and Eric Aycock, both Caucasian males and former employees of the Defendant, filed an action against the Sheriff's Department for the City of Richmond alleging wrongful termination based on racial discrimination in contravention of 42 U.S.C. § 1983. Compl. at ¶ 8. Aycock and Garrett were both terminated for allegedly causing the erroneous release of two inmates from the Richmond City Jail. Id. at ¶ 9. At the time of the erroneous releases, Koger was on duty and witnessed the relevant events. Id. at ¶ 10. Within one week of the erroneous releases, Aycock was terminated from his position with the Sheriff's Department. Id. at ¶ 12.

Immediately following Aycock's termination, two of Koger's supervisors asked her to provide a written report describing what she had witnessed. Id. at ¶ 17. In her written report, Koger confirmed the version of events that Aycock previously had provided to his supervisors. Id. This version of events primarily blamed Aycock's supervisors for the erroneous release of the inmates and portrayed Aycock as a dutiful subordinate. See id.

Within two days of filing her written report, Koger was interviewed by the Internal Affairs Department ("IAD") at the Sheriff's Department where she was told that her supervisors had requested her termination. Id. at ¶¶ 18-

2

20.   Koger was not terminated, but she received a written
reprimand for her "role" in the erroneous releases.   Id. at
¶ 19.

     Within one month of Aycock's termination, Koger was
again interviewed by IAD, at which time she was accused of
having made racist comments about Sheriff Woody.   Id. at ¶
21.   Koger asked the Investigating Officer about when these
comments were allegedly made, and she was told that they
were made on February 18, 2007, a day on which Koger
actually was off duty.   Id.   Koger then told the
Investigating Officer that she believed that she was being
interrogated due to her public support of Aycock.   Id. at ¶
22.   Nevertheless, Koger received a written reprimand
because of her alleged comments.   Id. at ¶ 26.   After the
reprimand, Koger timely filed an EEOC Complaint alleging
discrimination under Title VII of the Civil Rights Act of
1964 ("Title VII").   Id. at ¶ 27.

     In February 2007, Koger received an additional written
reprimand for complaining to one of the deputy sheriffs
that "only Caucasian officers" of the Sheriff's Department
"get terminated for their conduct."   Id. at ¶ 28.

     In March 2007, the supervisors at the Jail Annex
changed all of the employee's shifts to a twelve-hour
schedule.   Id. at ¶ 29.   Koger did not object to this

3

structural change. After this change, however, Koger was placed on the midnight shift, notwithstanding the fact that Koger had seniority over two African-American females who were assigned to the day shift. Id. at ¶ 31.

On July 3, 2007, Koger sent an e-mail to her supervisors, including Sheriff Woody, detailing several incidents at the Jail Annex in which an African-American employee purportedly had denied certain inmates medical treatment. Id. at ¶ 35. Koger subsequently was accused by her supervisors of making "negative comments" about her co-workers. Id.

In late July 2007, Koger timely filed a second EEOC Complaint. Id. at ¶ 37. In her Complaint, Koger alleged that she had been had retaliated against for supporting Aycock's version of the events leading up to the erroneous releases, and she also alleged that she had been the victim of racial discrimination at the Sheriff's Department. Id.

After filing the second EEOC Complaint, Koger was transferred from her post at the Jail Annex to the Seventeenth Street Jail, which is considered to be the "most undesirable and dangerous" post at the Sheriff's Department. Id. at ¶¶ 37-39. During her shifts at the Seventeenth Street Jail, Koger was assigned to the Jail perimeter post "more than any other officer." Id. at ¶ 41.

4

This assignment required Koger to remain outside the jail in "near freezing temperatures" throughout her shift.  Id. Sheriff Woody told Koger that he would reevaluate her employment situation in August 2008, but that never occurred.  Id. at ¶ 43.

On October 31, 2008, Koger requested fourteen hours of holiday leave, to which she was assertedly entitled to take by virtue of the length of her employment with the Department.  Id. at ¶ 44.  Koger was denied the leave, whereas every African-American deputy who worked at the Jail Annex was given holiday leave.  Id.  Shortly thereafter, Koger was officially reprimanded for missing an employee meeting, notwithstanding the fact that she was permissibly on vacation at the time of the meeting.  Id. at ¶ 45.

On January 8, 2008, based on the foregoing sequence of events, Koger executed an affidavit claiming that the Sheriff's Department discriminated against Caucasians.  Id. at ¶ 46.

On January 9, 2008, Koger was instructed to report to her supervisor, where she was served with two written reprimands for her alleged attendance violations.  Id. at ¶ 47.  A period of suspension of one to three days was recommended for each violation.  Id.  Koger, however, had a

doctor's note for each absence, and was therefore not in violation of the Department's leave policy. Id. at ¶ 48. This recommendation of suspension allegedly was made in contravention of the Department's Standard Operating Procedure ("SOP"). Id. at ¶ 49. On January 10, 2008, a hearing was conducted on these two charges. Id. at ¶ 50. One of the charges was dismissed, but Koger was found to have violated the Department's leave policy on the second charge. Id. Koger was suspended for one day. Koger then completed the requisite steps to appeal her violation. Id.

On January 31, 2008, Koger received her Employee Evaluation Form for the year 2007. On her evaluation, Koger was deemed to either "meet expectations" or "exceed expectations" in all categories. Id. at ¶ 55.

On February 5, 2008, Koger was assigned to security detail for an inmate who had been transported to the Medical College of Virginia Hospital for treatment. Id. at ¶ 57. On February 7, 2008, Koger was instructed to report to the IAD. Id. at ¶ 58. Upon her arrival, Koger was accused of having fallen asleep while assigned to guard the inmate at the hospital. Id. Koger responded by providing the IAD with a list of witnesses refuting this allegation. Id. Nevertheless, and assertedly without any inquiry of those witnesses, Koger was reprimanded for falling asleep

6

while on duty.  Id.  A three-day period of suspension was recommended for this violation.  Id. at ¶ 60.  Koger appealed this recommendation.  Id.

In late February 2008, a hearing was held on Koger's appeal of her one-day suspension respecting her alleged violation of the Department's leave policy.  Id. at ¶ 63. This suspension was upheld.  Id.  At that same hearing, and in contravention of SOP, Koger was also forced to address her three-day suspension for falling asleep while on duty. The three-day suspension was also upheld.  Id.

On March 13, 2008, Koger was again instructed to report to her supervisor's office where she was served with disciplinary charges stemming from the allegation that she had fallen asleep on the job.  Id. at ¶ 66.  This time, a ten-day period of suspension was recommended.  Id.  This period of suspension is allegedly far lengthier than is customary for such infractions.  Id. at ¶ 67.

On April 1, 2008, Koger was forced to "redo" an overtime slip that she had previously submitted, which resulted in a substantial decrease in her pay.  Id. at ¶ 70.  On April 2, 2008, Koger was issued two "counseling forms" for unspecified "minor infractions."  Id. at ¶ 73.

On May 7, 2008, Koger was told to report to her supervisor's office after her shift.  Id. at ¶ 74.  Upon

arrival, Koger was issued a "Progressive Discipline Written Reprimand," which recommended her termination due to her "abuse of sick leave."   Id.   Koger was told that a hearing on this reprimand would be held on May 13, 2008.   Id. at ¶ 78.   However, on May 8, 2008, and in violation of SOP, Koger was summoned for the hearing on her Progressive Discipline Written Reprimand.   Id. at ¶ 79.   At the conclusion of the hearing, Koger was suspended for thirty days due to her abuse of sick leave.   Id. at ¶ 89.

On May 13, 2008, Koger sent a registered letter to her supervisors, including Sheriff Woody, appealing the imposition of the thirty-day suspension.   Id. at ¶ 91.   On May 15, 2008, Koger arrived at the Department to meet with Sheriff Woody.   Id. at ¶ 93.   Upon arrival, Koger was escorted to the Jail's interrogation room, where she was read an "Insubordination Form" stating that she was under investigation for "dissemination of information."   Id. at ¶ 94.   Koger was then taken to meet Sheriff Woody, and Sheriff Woody told Koger that he was going to hear an immediate appeal of her thirty-day suspension.   Id. at ¶ 99.   Sheriff Woody listened to Koger for a short period of time, and he then informed her that she was being dismissed from the Richmond City Sheriff's Office.   Id.

Pursuant to the foregoing sequence of events, Koger's Complaint sets forth only one count, labeled "Retaliation." In Count One, Koger alleges:

> Defendant's conduct in repeatedly accusing Plaintiff of infractions she had not committed, in removing her from her post and placing her in a dangerous environment, despite her seniority and repeated requests to return to the Jail Annex, in subjecting her to repeated IAD investigations in violation of the Department's SOP, in thwarting her right to properly appeal her infractions in violation of the SOP, and in terminating her from her position, was all in retaliation for having supported Eric Aycock in the public workplace, and for being willing to testify for Plaintiffs in the trial of <u>Robert Garrett, et al. v. C.T. Woody</u>.  Defendant's aforementioned actions were further done in retaliation for Plaintiff having filed claims with the EEOC against Defendant.

Id. at ¶ 101.

On April 13, 2009, the Defendant filed a Motion to Dismiss (Docket No. 3). In its motion, the Defendant contends that: (1) the Sheriff's Office is not a "person" subject to suit under 42 U.S.C. § 1983; and (2) the foregoing allegations do not support a claim of retaliation under either the First Amendment or Title VII. See Def's Mot. at 2. This motion has now been fully briefed and is now ripe for decision.

## I.    The Applicable Legal Standard

A motion to dismiss under Rule 12(b)(6) seeks to test the legal sufficiency of the factual allegations made in

9

the Complaint.  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Id.  As the Court held in Bell Atlantic v. Twombly, 550 U.S. 544 (2007), the pleading standard Rule 8(a) announces does not require "detailed factual allegations," but it demands more than an unadorned accusation.  Id. at 555.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Id.  Nor does a complaint suffice if it tenders only "naked assertion[s]" devoid of "further factual enhancement."  Id. at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Id. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Id.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it

"stops short of the line between possibility and plausibility of entitlement to relief." Id. at 557.

### II.   Whether the "Sheriff's Office" May Be Sued Under 42 U.S.C. § 1983

The parties have sharply disputed whether the "Sheriff's Office" may be sued under 42 U.S.C. § 1983. In the "Statement of Jurisdiction" section of the Complaint, Koger does assert that she is suing Sheriff Woody "under 42 U.S.C. § 1983." In contrast, Koger's sole substantive Count of Retaliation explicitly asserts claims under "Title VII, 42 U.S.C. § 1981,[1] and the First Amendment," but it does not assert a claim under 42 U.S.C. § 1983. After the submission of briefing on the issue, however, it is clear that Koger is suing under both Title VII and the First Amendment, but not § 1983.

Because Fed. R. Civ. P. 8(a)(2) requires nothing more than a short and plain statement of the claim showing that the pleader is entitled to relief, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome

---

[1] In her Complaint, Koger states that she is asserting a claim under 42 U.S.C. § 1981, which provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings . . . ." Id. Nowhere in her Complaint, however, does Koger articulate a factual predicate for a proper claim under 42 U.S.C. § 1981. Therefore, any claim under against the Sheriff's Department under § 1981 is dismissed from this action.

and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 48 (1957). Hence, the Court will credit Koger's good-faith attempt to plead a claim under Title VII and her subsequent representation that her retaliation claim is asserted under Title VII and not § 1983. Thus, Koger will be given leave to amend her Complaint to conform to the Court's acknowledgement of her action under Title VII.[2] See Arbaugh v. Bd. of Educ., 329 F. Supp. 2d 762, 767 n.4 (N.D. W. Va. 2004) ("The Fourth Circuit's generosity in construing civil rights complaints also weighs in favor of granting leave to amend.").

### III. Koger's Retaliation Claims

The Defendant argues that Koger's retaliation claim, regardless of whether it is asserted under Title VII or the First Amendment, fails because the Complaint does not "contain any allegations establishing a connection between her support of Aycock and the alleged adverse employment actions taken against her." Def's Mot. at 7. Furthermore, the Defendant also contends that Koger has no claim under

---

[2] This conclusion obviates the need to address the dispute between the parties concerning whether the Sheriff's Department is amenable to suit under § 1983. As this Court recently held, however, "a lawsuit against a sheriff in his official capacity is actually a lawsuit against the Commonwealth of Virginia." Francis v. Woody, 2009 U.S. Dist. LEXIS 43599, at *12 (E.D. Va. May 22, 2009). Therefore, any action against a sheriff in his official capacity "under § 1983 will necessarily fail." Id.; accord Botkin v. Fisher, 2009 U.S. Dist. LEXIS 24554, at *18 (W.D. Va. Mar. 25, 2009).

the First Amendment because the First Amendment does not protect "expected speech," *i.e.*, contemplated speech that has not yet occurred, nor does the First Amendment protect speech that is not a matter of "public concern." <u>Id.</u> at 8.

### A.   Retaliation Under Title VII

Title VII makes it an "unlawful employment practice" to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1). To properly plead a prima facie case of retaliation under Title VII, a plaintiff must allege that: (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. <u>Coleman v. Loudoun County Sch. Bd.</u>, 294 Fed. Appx. 778, 781 (4th Cir. 2008).

In this case, the Defendant argues that the Complaint does not adequately allege a causal "connection" between Koger's protected activity and the adverse employment decisions alleged in the Complaint. <u>See</u> Def's Mot. at 8. In the Complaint, Koger alleges that she was retaliated against, in part, due to her willingness "to testify for Plaintiffs in the trial of <u>Robert Garrett, et al. v. C.T. Woody</u>." <u>See</u> Compl. at ¶ 101. Accordingly, the Defendant

argues that Koger's intent to testify in the lawsuit brought by Aycock cannot form the basis of a retaliation claim under Title VII. Def's Mot. at 8. Specifically, the Defendant argues that "[f]iring Koger would have had no effect on her offering testimony supporting Aycock` [at trial]. As such, there is no causal connection between the Sheriff's office firing Koger and her willingness to testify in the Aycock matter." Def's Mot. at 7, 8.

In support of this proposition, the Defendant cites Burley v. Wyoming Dept. of Family Services, 66 Fed. Appx. 763, 768 (10th Cir. 2003). In Burley, the Tenth Circuit held: "Even assuming she was subpoenaed, the causal link between Plaintiff's termination and the court appearance is, at best, unclear. *If it had been Ms. Yeaman's intent to 'prevent' plaintiff from testifying, dismissing her from her employment would not have accomplished that purpose.*" Id. (emphasis added). Thus, the lack of a "causal connection" in Burley was driven by the defendant's inability to prevent the plaintiff from testifying at trial simply by terminating the plaintiff from her employment position. See id. In this case, however, Koger does not allege that she was terminated in order to keep her from testifying. Rather, Koger has alleged that her *willingness* to testify at Aycock's trial, in and of itself, is what

14

drew the ire of the Sheriff.  <u>See</u> Compl. at ¶ 101 (Koger was retaliated against "for being willing" to testify at trial).   Thus, the factual situation which animated the decision in <u>Burley</u> is not present here.

Perhaps more fundamentally, however, the Defendant's argument also fails to address the other motivating factor alleged by Koger to be the impetus for her termination, *i.e.*, "retaliation for *having supported* Eric Aycock in the public workplace . . . ."  <u>See</u> Compl. at ¶ 101 (emphasis added).   Koger's public support for Aycock, which was manifested by Koger in various forms during her tenure at the Sheriff's Department, had nothing to do with the lawsuit filed by Aycock against the Sheriff.   And, this protected activity has a sufficient causal nexus to the alleged adverse employment decisions so as to be actionable under Title VII.

Indeed, within one week of providing the written statement to her supervisors, Koger allegedly received a written reprimand from the Department.  <u>Id.</u> at ¶ 21; <u>see also King v. Rumsfeld</u>, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (concluding that ten weeks between protected activity and adverse employment action "gives rise to a sufficient inference of causation").   Moreover, this initial written reprimand was the beginning of a sustained period of

retaliatory conduct, which was allegedly undertaken due to Koger's "outward support of Aycock, her EEOC filings, and her written and verbal criticisms of Sheriff Woody's [allegedly] discriminatory employment practices." Pltf's Opp. at 8. This sustained course of retaliatory conduct included: written reprimands, suspensions, denial of overtime pay, transferring Koger to an undesirable work location, violations of SOP, and Koger's termination. See, e.g., Compl. at ¶¶ 17-28, 31, 35-37, 44-47, 60, 79, 88, 94, 99. Because these allegations, if proven, would give rise to a claim of retaliation under Title VII, the Defendant's Motion to Dismiss must be denied with respect to this issue. Cf. Morales v. N.Y. State DOL Div. of Emple. Servs., 2007 U.S. Dist. LEXIS 72172, at *22 (N.D.N.Y Sept. 27, 2007) ("[T]he defendants subjected [the plaintiff] to 'long term and continuous' retaliation, including disciplinary proceedings, harassment, denial of training, and unequal terms and conditions of employment.").

B. First Amendment Retaliation

Koger has also stated a claim of retaliation under the First Amendment. Notwithstanding the substantive arguments advanced by the parties with respect to this issue, however, it is apparent that Koger has failed to properly assert a claim for retaliation under the First Amendment.

16

A claim of "retaliation" for the exercise of First Amendment rights must be asserted under 42 U.S.C. § 1983. See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 483 n.5 (4th Cir. 2005). Yet, Koger has explicitly represented to the Court that she is not suing under § 1983. Absent her invocation of the procedural vehicle provided by § 1983, however, Koger's "freestanding" claim against the Sheriff's Department under the First Amendment is not cognizable. Therefore, Koger's First Amendment claim is dismissed without prejudice. If, however, upon further reflection of the directives articulated in Fed. R. Civ. P. 11 Koger can legitimately assert a claim under the First Amendment, Koger shall be granted leave to file such an Amended Complaint.

CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss (Docket No. 3) is granted in part and denied in part.

It is so ORDERED.

_____ /s/ _____  *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  June 22, 2009